## HUGHES v. GROSHART.
### No. 5285.

Court of Civil Appeals of Texas. Amarillo.
April 7, 1941.

Rehearing Denied May 12, 1941.

J. E. Brown, of Brady, for appellant.

Garriott T. Baldwin, of Slaton, for appellee.

JACKSON, Chief Justice.

On November 2, 1933 E. C. Brand, the Banking Commissioner of the State of Texas, acting as such, recovered judgment in Cause No. 5769 in the District Court of Lubbock County in the sum of $1,695.43, with interest and costs of suit against C. W. Taylor, also known as Charles W. Taylor, and W. E. Olive, which judgment after it was abstracted was indexed and recorded on November 10, 1933, in the judgment records of Lubbock County, Texas, and by the banking commissioner transferred to S. W. Hughes on July 26, 1937.

On October 1, 1934 C. W. Taylor and his wife, Thelma, entered into a written contract with the Standard Savings & Loan Association, a corporation of Detroit, Michigan, herein called the savings bank, by the terms of which the savings bank agreed to sell and convey to C. W. Taylor and wife all of Lot No. 11 in Block No. 55 of the South Slaton Addition to the town of Slaton in Lubbock County, Texas, for a consideration of $100 cash paid and the additional amount of $1,975, with interest, payable in monthly installments of $25 each, the installments as paid to be applied first to the payment of interest and the balance on principal. When the sum of $475 was paid on the principal the savings bank agreed to make, execute and deliver a warranty deed conveying to the Taylors said lot and improvements upon their execution to the bank of a vendor's lien note and also a deed of trust to secure the payment of the balance of the purchase price.

The contract provided that the Taylors should have possession of the lot and premises when the contract was executed and delivered. The testimony shows that the bank prior to the execution and delivery of the contract agreed to make certain improvements on the premises and so soon as such improvements were completed the contract was signed by all parties and Taylor and his wife moved upon and occupied the premises as their homestead continuously and uninterruptedly until they sold the property to Dr. O. D. Groshart.

On March 7, 1936, in conformity with the contract, the savings bank executed and delivered to Charles W. Taylor and his wife, Thelma, a warranty deed conveying to them said lot and retained in the deed a vendor's lien to secure the payment of the balance of the purchase money which was evidenced by a vendor's lien installment note and also a deed of trust against the lot given by Taylor and his wife.

On December 30, 1939, Charles W. Taylor and wife executed a warranty deed conveying said Lot No. 11 to Dr. O. D. Groshart who was a married man and who with his family moved onto the premises on December 31st while the Taylors were moving out but before they had completely vacated the residence. Dr. Groshart and his family have since claimed, used and continuously occupied the premises as their homestead. The deed conveying the lot to Dr. Groshart recited a consideration of $900 paid, acknowledged the receipt thereof and also stipulated for the assumption by the grantee of the balance on the installment note given to the Standard Savings and Loan Association by Taylor and his wife.

In addition to the deed the grantors and grantee entered into a written contract which, together with the deed, was placed in escrow in the Citizens State Bank of Slaton. The contract was not introduced in evidence but the oral testimony, admitted without objection, indicates that it recited that Dr. Groshart had paid but $200 of the $900 cash payment acknowledged and stipulated that the remainder thereof, $700, was to be paid in monthly installments of $20 each and the deed was not to be delivered by the bank to the grantee until the entire $900 cash payment was made. No vendor's lien was retained in the deed dated December 30, 1939, to secure the payment of this $700 and on April 16, 1940, Taylor and wife executed to Dr. Groshart a deed which recites that it is given as a correction deed and in lieu of the deed executed December 30, 1939, but provides as part of the consideration that the $900 was paid and secured to be paid as follows: $200 cash on December 30, 1939, and the execution and delivery of a certain installment vendor's lien note of the same date for the

sum of $700, payable to Charles W. Taylor in monthly installments of $20 each and the further consideration of the assumption by Dr. Groshart of a balance of about $1,600 owing to the Standard Savings & Loan Association. This deed was filed and recorded in the deed records of Lubbock County on April 25, 1940, and the installment payments on the note for $700 to Mr. Taylor and also the installment payments on the note to the Standard Savings & Loan Association have been paid as they accrued by the grantee in the deed.

On May 1, 1940, Dr. Groshart, the appellee, instituted this suit in the District Court of Lubbock County, Texas against the appellant, S. W. Hughes and Fred C. Branson, who was then banking commissioner of the State of Texas, to cancel the judgment obtained in Cause No. 5769 in the District Court of Lubbock County in so far as it appeared to create a lien on Lot No. 11 and apparently cast a cloud on the title thereof because the lot and premises were not encumbered by, nor subject to, the judgment lien while the ownership thereof was in the savings bank; that the lot and premises were acquired by the Taylors under a written contract of sale with and the deed from the savings bank for a valuable consideration for their homestead and was immediately used and occupied as such by them and was impressed with the homestead right of Charles W. Taylor and his wife from the beginning, and therefore the judgment lien did not attach because the homestead rights acquired by and vested in them was superior to and not subject to such lien.

Since there is no attack on the pleadings of the appellee we deem the foregoing statement sufficient for the purposes of this appeal.

Fred C. Branson, who was at the time the banking commissioner, filed a disclaimer and was dismissed from the suit.

The defendant, S. W. Hughes, answered by general demurrer, special exceptions, general denial, pleaded the validity of the judgment in Cause No. 5769, the abstracting and indexing thereof properly, the transfer of the judgment to him by the banking commissioner; that the judgment lien attached to the lot and premises before title thereto was acquired by C. W. Taylor who purchased by contract; that such lien was valid and subsisting and still unpaid; that C. W. Taylor abandoned the property by his conveyance thereof to Dr. O. D.

Groshart and that neither the Taylors nor the appellee acquired title to the premises, or any homestead rights therein and prayed that his judgment lien be foreclosed and the property directed to be advertised and sold for the payment of his debt.

The case was tried before the court without the intervention of a jury and judgment rendered that the appellant take nothing by his suit and that the judgment in Cause No. 5769 be set aside, cancelled and held for naught in so far as it appeared to be a lien on, or cast a cloud upon the title and homestead rights of appellee in Lot No. 11 involved in this controversy.

The testimony shows that neither Charles W. Taylor nor Dr. Groshart, the appellee, claimed, owned or occupied a homestead prior to the acquisition of the property in controversy; that the property when purchased by each was acquired for a homestead; that Charles W. Taylor, with his family immediately moved upon, claimed, used and occupied the premises as a homestead until it was sold by him to the appellee, Dr. Groshart, who with his family moved upon the property before it was entirely vacated by his grantor, C. W. Taylor, and has since claimed, used and occupied the premises as the homestead of himself and family.

The appellant assails as error the action of the court in failing to foreclose his judgment lien and direct the sale of the property for payment of his debt since his lien attached thereto prior to the acquisition of any homestead rights of the appellee.

Under article 5449, Vernon's Annotated Texas Civil Statutes, a judgment lien, when properly abstracted, recorded and indexed shall "operate as a lien upon all of the real estate of the defendant situated in the county where such record and index are made, and upon all real estate which the defendant may thereafter acquire situated in said county". But such a lien does not operate upon property impressed with homestead rights under the Constitution and laws of Texas.

The law is that homestead rights attach to property when a dedication thereof is made for that purpose and this may be done before the fee passes or the entire purchase price paid subject to the vendor's lien. Macmanus v. F. M. Campbell, 37 Tex. 267.

In Gardner v. Douglass, 64 Tex. 76, it is held that although premises were purchased

some three months prior to the expiration of a lease contract to a third party whose occupancy thereof continued until the expiration of the lease, the purchaser having declared to his wife and no one else his intention to make the property their homestead, but moved on the property at the expiration of the lease and occupied it thereafter, the property was protected as his homestead by law against a judgment lien rendered against the purchaser before he acquired the property.

In Freiberg et al. v. Walzem, 85 Tex. 264, 20 S.W. 60, 61, 34 Am.St.Rep. 808, the record shows that Freiberg et al. had a judgment of record before Walzem, who claimed the property as his homestead, acquired title thereto, and the court said: "The counsel for the appellants contend that the lien of the appellants' judgment attached to the land in dispute at the very moment it was acquired, and before it became a homestead, and therefore it may be sold in satisfaction of the debt and lien. We do not concur in this view of the case. We are of the opinion that, under the disputed facts in evidence, as soon as appellee obtained the title to the property in question, it became immediately impressed with the homestead character, and therefore the judgment lien could not and did not attach to it."

 In Farmers' & Mechanics' Trust Co. et al. v. Perry et ux., Tex.Civ.App., 56 S.W.2d 501, 502, writ refused, it is said: "Our courts have held consistently from an early day that property purchased for use as a homestead is exempt to such purchaser, notwithstanding there be judgment liens recorded against him at the time. The homestead character and attending right of exemption attaches in such cases simultaneously with the acquisition of the property, in preference to the judgment lien."

See, also, Young et al. v. Hollingsworth et al., Tex.Civ.App., 16 S.W.2d 844, writ refused.

In Laubhan et al. v. Alliance Life Ins. Co., Tex.Civ.App., 134 S.W.2d 788, it is held that parties may acquire an equitable title to land under a contract and establish a homestead thereon before the legal title is acquired.

In Neal et al. v. Pickett, 280 S.W. 748, the Commission of Appeals holds that an escrow exhibits an agreement having some effect from the time such instruments are escrowed and vests a species of equit-

able title in the grantee. Under this holding the appellee acquired some title in the property at the time the original deed and contract of sale dated December 30, 1939, were deposited with the bank.

The law is settled that a married man with a family may acquire homestead rights on land to which he has only an equitable title or in which he owns but an undivided interest. Young et al. v. Hollingsworth et al., supra; Laubhan et al. v. Alliance Life Ins. Co., supra.

In our opinion there is no question of abandonment in this controversy that affects the homestead right of appellee in the property.

The judgment is affirmed.